UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUAN MAIDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:17-cv-874-GCS |
| | ) |
| WILLIAM P. HARRIS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Juan Maiden alleges that, while he was incarcerated at Pinckneyville Correctional Center and working as a cook, he stepped on a broken floor grate in front of the stove and fell. He put his left arm out to break his fall and burned it on a hot kettle. According to Maiden, Defendant William P. Harris, the dietary manager, was aware of the broken grate and failed to act to protect Maiden from a risk of serious harm in violation of the Eighth Amendment. Now before the Court is a motion for summary judgment filed by Defendant Harris. For the reasons delineated below, the Court grants Defendant's motion for summary judgment (Doc. 34).

### FINDINGS OF FACT

At all times relevant to his complaint, Plaintiff Juan Maiden was an inmate within the custody of the Illinois Department of Corrections and was incarcerated at Pinckneyville Correctional Center. He worked in the kitchen at Pinckneyville as a cook during the first shift from 3:00 a.m. until 12:30 p.m. Beginning in August 2016, Defendant Harris worked as the dietary manager at Pinckneyville.

At his deposition, Maiden testified that he worked in the kitchen at Pinckneyville five days per week since 2011. He described the kitchen set-up as having eight 80-gallon kettles on a stove in the middle of the floor with a floor grate over a drain in front of the kettles. In order to cook, inmate workers stand and walk on top of the grates. At the end of first shift, kitchen workers clean the area with the grates before preparing dinner. The grates lift out of the floor, and, if one is not properly situated, workers shift them back into place. (Doc. 35-1, p. 6-7).

On the day of his injury, September 24, 2016, the kitchen workers had cleaned the kettles off and washed the food through the grate and down the drain, picking up each of the grates in the process. Maiden did not notice that anything was wrong with the grates while stepping on them and cooking, but he noticed that they were loose and rocking after cleaning up. Maiden said that he did not move the grates to clean them that day. (Doc. 35-1, p. 7-8). He testified that there were pieces of the grates that needed to be repaired and that he would step around those areas. (Doc. 35-1, p. 8).

Maiden was cooking at the kettles when he stepped on a grate while reaching for an item. The grate moved, causing Maiden to fall into the drain. He reached out his left arm to break his fall, and he touched a hot kettle, resulting in a burn. (Doc. 35-1, p. 11-13, 16). Maiden testified that he did not know if anyone complained to Defendant Harris about the grates before September 24, 2016, but he did mention that another inmate injured himself on the grates after Maiden did. (Doc. 35-1, p. 9). Maiden could not recall a specific time that he told Harris that the grate needed attention, but he said that Harris was informed whenever there was a problem "where the concrete [was] broken." (Doc.

35-1, p. 16). Maiden alleges that he sustained a painful burn, approximately 5" by 2" in size, on his arm and that the burn required treatment and left his arm permanently discolored. (Doc. 1, p. 4).

Defendant Harris submitted a declaration in which he avers that the grates in the kitchen area are heavy, weighing at least ten pounds each, and that they sit above the drain. He agrees that inmate workers must walk on the grates in order to cook using the kettles. When the kettles need to be emptied, Harris explained that inmates working the area lift the grates off the lip area where they sit and then pour the water into the drain. If the grate is not situated properly, then it will be loose. He denied being informed of or aware of any broken grates or broken welds on the grates before the incident in which Maiden was burned at the end of September 2016. Harris received no complaints from Maiden or from other inmates about the floor grates. (Doc. 35-5).

Defendant Harris also submitted work orders related to the floor grates. (Doc. 35-4). The work orders show that the floor grates were repaired on June 16, 2016, because they were not fitting properly. The grates also were repaired on October 6, 2016, though the work order does not provide additional insight as to what was repaired. In April 2017, the floor drain was repaired again due to a piece that was sticking out that needed to be removed. (Doc. 35-4).

Maiden filed suit seeking declaratory relief and monetary damages. (Doc. 1, p. 6). The Court, at threshold review, determined that Maiden brought a claim against Harris for deliberate indifference to the hazard posed by the broken floor grates (Count 1) and

that he stated a negligence claim under Illinois due to Harris's failure to address the dangerous condition of the floor grates (Count 2). (Doc. 6).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.,* 756 F.3d 542, 544 (7th Cir. 2014).

The Eighth Amendment prohibition on cruel and unusual punishment forbids the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)(citation omitted). To succeed on a claim related to conditions of confinement, a

plaintiff must establish both an objective and subjective element. *See Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). As to the objective element, a prisoner must establish that the conditions deny him "the minimal civilized measure of life's necessities," creating an excessive risk to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To do so, he must show that the conditions resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *See Rhodes*, 452 U.S. at 347.

The subjective component of a claim for unconstitutional conditions of confinement requires demonstrating that a defendant had a culpable state of mind, that is that a defendant acted with deliberate indifference to a substantial risk of serious harm to the prisoner. *See Farmer*, 511 U.S. at 837, 842. While mere negligence does not amount to a constitutional violation, a plaintiff satisfies the deliberate indifference standard by showing that a prison official acted, or failed to act, despite the official's knowledge of a substantial risk of serious harm from the alleged unconstitutional conditions. *See Farmer*, 511 U.S. at 842; *Davidson v. Cannon*, 474 U.S. 344, 347-348 (1986). That is, prison officials must act to prevent "unreasonable peril" or to address "preventable, observed hazards that pose a significant risk of severe harm to inmates." *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016).

To prove a claim for negligence under Illinois law, a plaintiff must establish that a defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach proximately caused plaintiff's injury. *See Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011)(citing *Iseberg v. Gross*, 879 N.E.2d 278 (2007)).

ANALYSIS

1. **Deliberate Indifference Claim**

On September 24, 2016, Maiden reported to his job in the kitchen at Pinckneyville for his shift beginning at 3:00 a.m. He began preparing and cooking inmate meals. He and the other inmates walked across and stood on heavy grates in the floor in order to do their jobs, as they had done many shifts before. That morning, however, after the grates had been in place for four or five hours with inmates walking and standing on them, Maiden was involved in an accident during which he fell through a grate into the deep drain in the floor and broke his fall by touching a hot kettle, resulting in injuries and burns that continue to cause him trouble.

Objectively speaking, however, to survive summary judgment there must be sufficient evidence that the floor-grate system in the Pinckneyville kitchen presented an excessive risk to inmate safety, and there is little evidence that Maiden's injuries were caused by anything more than an unfortunate accident. Maiden could identify only one situation other than his where the grates caused an injury to a kitchen worker, despite the regular and consistent use of the kitchen to prepare meals. That is not enough evidence to allow a reasonable juror to conclude that the grate and drain system in the kitchen, even in its allegedly faulty state, created an excessive risk of harm to Maiden.

Even if the condition of the grates and the drain did create an excessive risk of harm to the kitchen workers, there is insufficient evidence that Harris acted with deliberate indifference. Maiden, by his own testimony, could not recall a specific time that Harris was told of the alleged break in the grate that led to his injury. Maiden did

ANALYSIS

1. **Deliberate Indifference Claim**

On September 24, 2016, Maiden reported to his job in the kitchen at Pinckneyville for his shift beginning at 3:00 a.m. He began preparing and cooking inmate meals. He and the other inmates walked across and stood on heavy grates in the floor in order to do their jobs, as they had done many shifts before. That morning, however, after the grates had been in place for four or five hours with inmates walking and standing on them, Maiden was involved in an accident during which he fell through a grate into the deep drain in the floor and broke his fall by touching a hot kettle, resulting in injuries and burns that continue to cause him trouble.

Objectively speaking, however, to survive summary judgment there must be sufficient evidence that the floor-grate system in the Pinckneyville kitchen presented an excessive risk to inmate safety, and there is little evidence that Maiden's injuries were caused by anything more than an unfortunate accident. Maiden could identify only one situation other than his where the grates caused an injury to a kitchen worker, despite the regular and consistent use of the kitchen to prepare meals. That is not enough evidence to allow a reasonable juror to conclude that the grate and drain system in the kitchen, even in its allegedly faulty state, created an excessive risk of harm to Maiden.

Even if the condition of the grates and the drain did create an excessive risk of harm to the kitchen workers, there is insufficient evidence that Harris acted with deliberate indifference. Maiden, by his own testimony, could not recall a specific time that Harris was told of the alleged break in the grate that led to his injury. Maiden did

not tell Harris that day that the grate was broken because even he did not notice any specific issue with the grate before his fall. (Doc. 35-1, p. 16). There is only one work order addressing repairs to the grates before Maiden's injury. The repairs took place months before Maiden's fall, and there is no evidence of complaints or issues at or near the time of the accident at issue. As a result, the Court finds that there is not sufficient evidence to allow a reasonable juror to find that Harris failed to address a preventable, observed risk to Maiden's safety on the day of his injury, and Harris is entitled to summary judgment on Maiden's deliberate indifference claim.

2. **Negligence Claim**

Maiden's negligence claim is before this Court subject to an exercise of supplemental jurisdiction in connection with his § 1983 claim in Count 1. *See* 28 U.S.C. §§ 1331, 1367. As Harris was granted summary judgment on Count 1, the Court could decline to retain jurisdiction over Maiden's state-law claim, which, given the nature of the claim in Count 2, is appropriate, as the Illinois Court of Claims has exclusive jurisdiction over all tort claims against the State. *See* 705 ILCS § 505/8(d).

While Maiden's claim is against Harris and not Illinois specifically, Harris argues that Maiden's negligence claim nonetheless is barred by the Illinois State Lawsuit Immunity Act, which defines, in part, the bounds of sovereign immunity under Illinois law. The Illinois sovereign immunity statute protects the State from being "made a defendant or party in any court." 745 ILCS § 5/1. Here, Defendant is a state employee, and the state is a not named party to this action. That said, the Illinois sovereign immunity statute "cannot be evaded by making an action nominally one against the servants or

agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." *Sass v. Kramer*, 381 N.E.2d 975, 977 (Ill. 1978).

A claim against a state employee equates to a claim against the State of Illinois when:

> there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*Murphy v. Smith*, 844 F.3d 653, 658 (7th Cir. 2016)(quoting *Healy v Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990) and *Robb v. Sutton*, 498 N.E.2d 267, 272 (Ill. 1986)). Where, however, a plaintiff alleges that state employees violated "statutory or constitutional law," "[s]overeign immunity affords no protection." *Murphy*, 844 F.3d at 659 (quoting *Healy*, 549 N.E.2d. at 1247). "This exception is premised on the principle that while legal official acts of state officers are regarded as acts of the State itself, illegal acts performed by the officers are not." *Murphy*, 844 F.3d at 659 (quoting *Leetaru v. Bd. of Trustees of University of Illinois*, 32 N.E.3d 583, 596 (Ill. 2015)).

Here, even if Maiden proves each element of his state law negligence claim, he will not have established a constitutional violation or a statutory violation, as an Illinois negligence claim is based on common law. Further, there is no evidence that Harris acted outside the scope of his authority to the extent that his actions can be said to have caused Maiden's injury. The duty that Harris allegedly owed Maiden arose solely by virtue of

his employment, *see Currie v. Lao*, 148 Ill.2d 151, 159 (Ill. 1992), and Maiden's allegations involve matters normally within the scope of Harris's employment. This is not a situation where Harris's actions, or alleged inaction, can be said to be far outside his normal duties as the dietary manager. As such, Maiden's state law negligence claim is best interpreted as a claim against the State of Illinois, and, as such, it is barred in this Court by the Illinois State Lawsuit Immunity Act, particularly in light of the above-finding that Harris is entitled to summary judgment on Maiden's constitutional claim. To the extent that subject-matter jurisdiction could be exercised in the Court's discretion, the undersigned declines to do so. Instead, Count 2 is dismissed without prejudice.

3. **Qualified Immunity**

Defendant Harris also argues that he is entitled to qualified immunity on Count 1. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's

conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson*, 555 U.S. at 232. *See also Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). As the facts here, in the light most favorable to Maiden, do not establish that Harris's conduct violated a constitutional right, Harris is entitled to qualified immunity on Count 1.

## CONCLUSION

For the above-stated reasons, Defendant William Harris's motion for summary judgment (Doc. 34) is **GRANTED**. Judgment shall be entered in favor of Defendant William P. Harris and against Plaintiff Juan Maiden on Maiden's deliberate indifference claim. Maiden's negligence claim, brought under Illinois common law, is **DISMISSED without prejudice**, as the Court declines to retain supplemental jurisdiction in the absence of a federal claim and because tort claims against the State of Illinois are best heard by the Illinois Court of Claims. The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

Dated: January 24, 2020.

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2020.01.24 12:18:59 -06'00'

GILBERT C. SISON
United States Magistrate Judge